UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SAFRAN ELECTRONICS & DEFENSE SAS,
and SAFRAN ELECTRONICS & DEFENSE
GERMANY GMBH,

                        Petitioners,

        -against-                                    18-cv-7220 (LAK)


IXBLUE SAS,

                        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/6/2019

## MEMORANDUM OPINION


Appearances:

> Scott W. Reynolds
> Yasmine Lahlou
> Gretta L. Walters
> Meredith Craven
> CHAFFETZ LINDSEY LLP
>
> *Attorneys for Petitioners Safran Electronics & Defense SAS
> and Safran Electronics & Defense Germany GmbH*
>
>
> Peter A. Sullivan
> Caroline Stoker Donovan
> FOLEY HOAG LLP
>
> *Attorneys for Respondent iXblue SAS*

LEWIS A. KAPLAN, *District Judge.*

This case involves a dispute arising out of a technology license. Two principal questions are before the Court: whether (i) SED Germany is obligated to arbitrate claims in accordance with the terms of the License Agreement and (ii) arbitral proceedings should continue in New York.

*Facts*

*The Parties*

Safran Electronics & Defense SAS ("SED") is a supplier of products and services for civil and defense applications including avionics, electronics and other software. It is organized under the laws of and registered to do business in France.[1] Safran Electronics & Defense Germany GmbH ("SED Germany") specializes in the design, development and production of inertial sensors and equipment for flight control, navigation and industrial systems. It is a wholly owned subsidiary of SED, and is organized under the laws of and registered to do business in Germany.[2] iXblue SAS ("iXblue") provides navigation, positioning and imaging services and solutions for civil and defense customers.[3] It is organized under the laws of and registered to do business in France.[4]

---

[1]    DI 11 at 2.

[2]    *Id.*

[3]    DI 15 at 2.

[4]    DI 1 at 2.

*Relevant Agreements and Background*

On August 12, 1993, the predecessors of SED and iXblue entered into a License and Know-How Agreement (the "License Agreement") pursuant to which iXblue's predecessor licensed SED's predecessor to incorporate certain fiber-optic gyroscope ("FOG") know-how into the FOG equipment that SED's predecessor sold.[5]   Article IX of the License Agreement contains an arbitration provision that encompasses all disputes that potentially could arise under the agreement.[6]

A few years after entering into the License Agreement, the predecessors of SED, SED Germany and iXblue created Eurofog as a joint-venture.[7]  Under the joint-venture arrangement, each party granted a license to use its FOG-related know-how and Eurofog became the licensee under the License Agreement.[8]  In 2011, the predecessors of SED, SED Germany, iXblue and other parties entered into a Settlement Agreement to resolve claims brought by iXblue pertaining to the methods of use of iXblue's patents and know-how, and relating also to the management of Eurofog.[9]  Under the Settlement Agreement, iXblue relinquished its shares in Eurofog, the SED parties paid a settlement, and the scope of the License Agreement was extended.[10]  The Settlement Agreement included an addendum to the License Agreement (the "Addendum"), which stated that iXblue was

---

[5]  DI 15 at 2-3.

[6]  DI 12-2 at ECF 16-18.

[7]  DI 11 at 3.

[8]  *Id.*

[9]  DI 16-1.

[10]  DI 11 at 4.

the Licensor and Eurofog the Licensee under the agreement.[11]  Among other things, the Addendum

provided additional rights regarding the parties to which Eurofog could grant a sublicense and

additional assignment rights.[12]  Eurofog was absorbed by SED in 2013.  As a result, SED became

the licensee under the License Agreement.[13]

Subsequent to the Settlement Agreement, disputes continued to arise concerning the

transfer of technology.  In 2014, iXblue initiated a proceeding for an expert assessment under the

French Code of Civil Procedure pertaining to whether SED had breached the License and Settlement

Agreements by selling products outside of the scope of the License Agreement.[14]  The French

Commercial Court of Nanterre denied iXblue's application.  iXblue appealed that decision to the

Versailles Court of Appeal,[15] which affirmed the Commercial Court's decision in February 2016.[16]

*The Arbitration Clause*

Provisions relevant to this case appear in three subsections of Article IX of the

License Agreement:

*First*, Article IX(A) created a pre-arbitration dispute resolution procedure that

---

[11]

DI 16-1 at ECF 33-34.

[12]

DI 16-1.

[13]

DI 11 at 4.

[14]

*Id.*

[15]

DI 15 at 7.

[16]

DI 11 at 4.

requires the parties to use best efforts to resolve any disputes through negotiation before resorting to arbitration. It provides also for a "mini-trial" in the event that negotiations fail.[17]

*Second*, Article IX(B) provides: "[t]o the extent that a dispute arises between Licensor and Licensee, and the procedures described in [Article IX(A)] do not result in a dispute resolution, except as provided in Article IX(C) any dispute arising out of or related to that circumstance shall be finally settled" by arbitration in Paris under French law.[18] Article IX(B) provides also that "[t]he parties hereby agree to exclude any right of application or appeal to the courts of France."[19]

*Third*, Article IX(C) provides: "[t]o the extent that a dispute arises between Licensor and Licensee *and results from sale of the Product*[20] *to an end-user outside of the EEC,*[21] and, in such case, the procedures described in [Article IX(A)] do not result in a dispute resolution," then that dispute "shall be finally settled by arbitration in accordance with the rules of conciliation and arbitration of the International Chamber of Commerce" in New York.[22] Article IX(C) provides also that "the Parties hereby agree to exclude any right of application or appeal to the New York courts

---

[17]

DI 12-2 at 15.

[18]

*Id.*

[19]

*Id.*

[20]

"Product" is defined as "a Fiber Optic Gyro, or any part thereof, which includes, or is manufactured using, (i) all or any part of Licensor's Know-How, or (ii) at least one of the claims of any of the Patents, or (iii) any of the Improvements related thereto. *Id.* at 5.

[21]

"EEC" was the predecessor of the European Union.

[22]

DI 12-2 at 16 (emphasis added).

in connection with any question of law arising in the course of the reference, or arising out of the award."[23]

*The Current Dispute*

In March 2016, iXblue invoked the pre-arbitration dispute resolution provisions of the License Agreement.[24] Early attempts to resolve the dispute through negotiation failed. iXblue then informed SED that unless SED agreed to conduct a mini-trial pursuant to Article IX(A), "iXblue [would] have no choice but to go before the court with jurisdiction on the merits, in accordance with the provisions of Article IX(C) of the [License] Agreement."[25] On October 25, 2017, SED responded that "any mini-trial would be meaningless today and would only result in unnecessary additional costs."[26]

On June 29, 2018, SED filed a request for arbitration against iXblue in Paris in accordance with Article IX(B) of the License Agreement. Two weeks later, iXblue filed a request for arbitration against SED and SED Germany in New York in accordance with Article IX(C) of the License Agreement.[27] In its request for arbitration in New York, iXblue submitted, *inter alia*, a supply chain organizational chart indicating that SED Germany's client sold products incorporating

---

23

 *Id.*

24

 DI 16-3.

25

 DI 16-10 at 5.

26

 DI 16-11at ECF 3.

27

 DI 15 at 8.

FOG technology to two Canadian suppliers.[28] The chart identifies no specific end-users located outside of the European Union. It indicates, however, that the Canadian suppliers sold products to "multiple final clients – (world)" as end-users.[29]

On August 10, 2018, SED and SED Germany petitioned this Court for an order and judgment: (i) preliminarily enjoining the New York arbitration until the Paris arbitration reaches an interim decision on its jurisdiction; (ii) preliminarily and permanently enjoining iXblue from prosecuting the New York arbitration against SED Germany; (iii) staying the New York arbitration; and (iv) compelling iXblue to participate in the Paris arbitration.[30] On September 11, 2018, iXblue filed a motion to dismiss the petition of SED and SED Germany pursuant to Federal Rule of Civil Procedure 12(b)(6).[31]

## Discussion

### Subject Matter Jurisdiction

Petitioners assert that this Court has subject matter jurisdiction pursuant to Section 203 of Title 9 of the United States Code, which empowers district courts to enforce the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").[32]

---

[28]  DI 11 at 6-7; DI 12-3 at ECF 2.

[29]  *Id.*

[30]  DI 1 at 10.

[31]  DI 25.

[32]  DI 1 at 2.

iXblue does not contest, or even address, the Court's subject matter jurisdiction. Nevertheless, "[t]he [New York] Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope."[33]

The License Agreement is a written agreement between the predecessors in interest of SED and iXblue. It provides for arbitration in either Paris or New York, depending on the subject matter of the dispute. Both France and the United States are signatories to the convention. The subject matter of the agreement involves the licensing of technology sold commercially. iXblue and SED both are French companies.[34] Additionally, "courts in this Circuit have found Section 203 jurisdiction [under the New York Convention] where a party seeks to compel arbitration, enjoin or stay an arbitration proceeding, or enjoin a proceeding 'in aid of arbitration.'"[35] This Court therefore has original jurisdiction over this matter.

---

[33]

Smith/Enron Cogen. Ltd. P'ship v. Smith Cogen. Intern., Inc., 198 F.3d 88, 92 (2d Cir. 1999); see 9 U.S.C.A. § 202.

[34]

9. U.S.C.A. § 202 states that "[a]n agreement . . . which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."

[35]

Albaniabeg Ambient Sh.p.k. v. Enel S.p.a., 169 F.Supp.3d 523, 529 (S.D.N.Y. 2016) (collecting cases); see also CRT Capital Group v. SLS Capital, S.A., 63 F.Supp.3d 367, 376 (S.D.N.Y. 2014) ("The Court therefore may enjoin an arbitration proceeding governed by the New York Convention when the parties 'have not entered into a valid and binding arbitration agreement' or when the claims are 'not within the scope of an arbitration agreement.'") (quoting In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 140 (2d Cir. 2011)).

*Whether SED Germany is Bound by the Arbitration Provisions of the License Agreement*

The parties agree that iXblue and SED are parties to the License Agreement and are obliged to comply with its arbitration provisions. But neither SED Germany nor its predecessors were signatories of the License Agreement. Consequently, petitioners argue, SED Germany never agreed to arbitrate claims in any forum.[36]

"In considering whether 'a particular dispute is arbitrable,' a court must first decide 'whether the parties agreed to arbitrate.'"[37] "Whether an entity is a party to the arbitration agreement also is included within the broader issue of whether the parties agreed to arbitrate."[38] Although neither SED Germany nor its predecessor is a signatory to the License Agreement, the "Second Circuit 'ha[s] stated . . . that non-signatories may be bound by arbitration agreements entered into by others . . . pursuant to five different theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.'"[39] A willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories.[40]

iXblue contends for a variety of reasons that SED Germany is bound to arbitrate disputes in accordance with the License Agreement. For present purposes, it is necessary to discuss

---

[36]   DI 11 at 14.

[37]   *Smith/Enron Cogen. Ltd. P'ship*, 198 F.3d at 95 (quoting *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999)).

[38]   *Id.*

[39]   *Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 803 F.Supp.2d 270, 273 (S.D.N.Y. 2011) (quoting *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999)).

[40]   *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F.Supp.2d 334, 356 (S.D.N.Y. 2005).

only one of its arguments.

In the past proceeding before the Versailles Court of Appeal, the issue related to iXblue's request for an expert assessment of evidence relating to the claims that now form the basis of the present dispute.[41] Petitioners – including SED Germany – argued that iXblue's claims were subject to arbitration under Article IX(C) of the License Agreement.

"In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate."[42] Moreover, an agreement to arbitrate may be implied from the conduct of a non-signatory based on its past statements in a foreign proceeding.

In *Petition of Transrol Navegacao S.A.*[43] the court held that a party's previous statement in a French court that it could not be sued there due to the existence of an arbitration agreement was sufficient to imply the existence of the arbitration agreement with respect to that party notwithstanding the fact that it was not a signatory. The court concluded that there was "no

---

[41]

As petitioners described in their submission to the Versailles Court of Appeal, the proceeding involved iXblue's request, "on the basis of article 145 of the Code of Civil Procedure, [for] the appointment of an expert assigned with the task...of locating within [SED and SED Germany's predecessors], a list of FOGs and IMUs to FOGs that were to be integrated into navigation and guidance equipment for various military and civilian hardware, together with a list of customers who have benefitted from products which iXblue claimed constituted a misappropriation of its technology." DI 16-2 at ¶ 43.

[42]

*Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) (citing *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) cert. denied, 502 U.S. 910 (1991); *Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co.*, 782 F.Supp. 28, 31 (S.D.N.Y. 1992); *In re Transrol Navegacao S.A.*, 782 F.Supp. 848, 851 (S.D.N.Y. 1991)).

[43]

782 F. Supp. 848.

question" as to whether a non-party to an arbitration clause "initially intended to arbitrate" the dispute, as the non-party had invoked the clause as a defense in a separate proceeding.[44]  In reaching its decision, the court relied on *Gvozdenovic v. United Air Lines, Inc.*[45] for the principle that "[a]lthough a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct."[46]

Petitioners contend that reliance on their past representations to the French court to imply the existence of an arbitration agreement with respect to SED Germany would be inappropriate because the French proceeding involved claims for an expert assessment and the production of documents, which are covered explicitly under Article IX(C) of the License Agreement.[47]  They claim also that iXblue took the position in those same proceedings that the dispute was governed by Article IX(B), which is contrary to iXblue's position now.[48]

While the dispute before the French court involved an expert assessment for discovery purposes, that does not change the fact that petitioners, including SED Germany, expressly argued that the arbitration provisions of Article IX(C) of the License Agreement governed the dispute relating to both petitioners, i.e., SED and SED Germany.  Moreover, petitioners intended that those arguments apply to SED Germany, as they argued, in the context of challenging the French court's

---

[44]

  *Id.* at 851.

[45]

  933 F.2d 1100.

[46]

  *Id.* at 1105.

[47]

  DI 21 at 3, fn. 2.

[48]

  *Id.*

jurisdiction, that iXblue's claims applied *only* to SED Germany's predecessor and that SED therefore should be dismissed from the case.[49]

That position directly contradicts petitioners' current position that SED Germany is not bound by the arbitration agreement, as it made clear that petitioners' argument to the French court regarding the arbitrability of these claims applied specifically to SED Germany. Petitioners made that argument in an effort to have the French appellate court uphold the Commercial Court's decision not to appoint an expert for assessment purposes. It prevailed in that dispute. SED Germany therefore is obliged to arbitrate these claims now.

Having concluded that SED Germany assumed the agreement to arbitrate these claims based on its past assertions to the French court, it is unnecessary to discuss iXblue's other arguments.

*Whether Arbitration in New York Should Continue*

Petitioners seek a preliminarily injunction staying the New York arbitration and compelling iXblue's participation in the Paris arbitration. To prevail on that motion, petitioners must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."[50] A

---

[49]     DI 16-2 at ¶ 64 ("The inclusion of Sagam DS in the present procedure is therefore wholly artificial . . . as the sales claimed against the Sagem group are, according to iXblue itself, exclusively attributable to [SED Germany's predecessor]."); *see also* DI 16-2 at ¶ 11 ("it is clearly apparent . . . that the disputed sales only involve [SED Germany's predecessor].").

[50]     *CRT Capital Group*, 63 F.Supp.3d at 376 (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[51]

Petitioners assert that iXblue has submitted no evidence suggesting that products were sold to end-users outside of the European Union and that Article IX(C) therefore is not applicable here. iXblue counters that the parties intended to submit threshold questions of arbitrability to the arbitrators and that the New York tribunal therefore should be permitted to assess the scope of its jurisdiction over these claims.

Under the New York Convention, "arbitrability questions are presumptively to be decided by the courts, not the arbitrators themselves . . . the latter presumption can be rebutted only by 'clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator.'"[52] iXblue argues that the clear and unmistakeable intent of the parties to submit gateway questions of arbitrability to the arbitrators is evident from: (1) the use of broad arbitration provisions in the License Agreement, (2) the incorporation of arbitral rules that delegate questions of arbitrability to the arbitrators, and (3) language in the arbitration provisions that expressly forecloses application to the courts of New York or Paris to determine issues related to those provisions.[53]

Ultimately, we need not evaluate whether the language of the License Agreement demonstrates a clear and unmistakable intent to submit the question of which arbitration provision

---

[51] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

[52] *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir.2002)).

[53] DI 15 at 12-15.

applies to this dispute to the arbitrators because petitioners concede that the parties to the License Agreement in fact have delegated such questions to the arbitrators. Their reply memorandum in support of their motion states: "ixblue argues that the Court should not decide the question of arbitrability because the parties have delegated that question to the arbitrators. With respect to SED, Petitioners agree."[54] The Court agrees with petitioners' follow-on argument that it is for the Court, and not the arbitrators, to determine whether SED Germany is bound by the arbitration agreement as a threshold matter. But having already concluded that SED Germany is so bound, it follows that all parties intended to submit questions of arbitrability to the arbitrators under the License Agreement.

Rather than argue that the Court should decide which arbitration provision applies, petitioners instead request that the Court grant a preliminary injunction so that the Paris tribunal can decide its own jurisdiction over these claims before the New York tribunal does the same.[55] In support of this position, they invoke the "first-filed" rule, which states: "where there are two competing lawsuits, the first should have priority."[56]

Application of the first-filed rule to stay the New York arbitration until the Paris tribunal decides its own jurisdiction would be inappropriate in these circumstances. The "rule

---

[54]

DI 21 at 9.

[55]

"Notwithstanding whether an ICC tribunal in New York may have jurisdiction to determine its own jurisdiction, the Court should apply the first-filed rule to preliminarily enjoin the New York Arbitation so that the first-filed forum – the Paris Tribunal – can determine whether iXblue's claims are within its jurisdiction." DI 21 at 5-6.

[56]

*Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (citing *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).

usually applies when identical or substantially similar parties and claims are present in both courts."[57]

Under the License Agreement, however, the specific claims at issue logically may be adjudicated in only one of the two specified forums for arbitration. The claims either fall within the exception of Article IX(B) and (C) or they do not.

Petitioners rely on *L.F. Rothschild & Co., Inc. v. Katz*[58] to argue that the Court should stay the second-filed New York arbitration in favor of the first-filed Paris arbitration. But that case demonstrates why application of the first-filed rule would be inappropriate here. In *L.F. Rothschild*, the arbitration agreement specified that either of two arbitral forums properly could preside over the claims at issue.[59] In contrast, the terms of the License Agreement here necessarily limit the appropriate jurisdiction for specific claims to arbitrators in either Paris or New York, but not both. To stay the New York arbitration in favor of a jurisdictional decision from the Paris arbitrators would serve only to strip the New York arbitrators of their authority to determine the scope of their jurisdiction to hear these claims under Article IX(C).[60]

Lastly, although petitioners claim that they are not asking the Court to decide which arbitration provision governs the instant dispute, their filings are replete with arguments that Paris

---

[57]
    *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116-117 (2d Cir. 1992).

[58]
    702 F. Supp. 464 (S.D.N.Y. 1988).

[59]
    *Id.* at 467.

[60]
    Application of the first-filed rule would be inappropriate under these circumstances also due to the absence of SED Germany as a party in the Paris arbitration.

is in fact the proper venue for arbitration.[61] These arguments apparently are made in an attempt to

bolster their position that the Paris arbitrators should have primacy over the New York arbitrators

to determine which arbitral venue is appropriate. Because the parties intended for the arbitrators to

decide the scope of their jurisdiction over these claims, the Court will not judge the merits of these

arguments. However, it notes that petitioners' current position directly contradicts arguments it

raised in its brief to the Versailles Court of Appeal. Petitioners there argued on the basis of the same

supply chain diagram showing sales to two Canadian suppliers, "[o]n the first hand, the arbitration

clause set forth in Article IX(B) is a clause that is manifestly pathological . . . here it does not have

any relevance . . . it plainly appears that the 'end clients' mentioned by iXblue are located in the

'world' and in Canada."[62]  Thus, even if the Court were to determine that the ultimate merits

question should take account of how the arbitral panels are likely to rule regarding the appropriate

forum to hear these claims, petitioners' past representations raise serious doubts as to whether they

have shown a likelihood of success on the merits or sufficiently serious questions going to the merits.

The question of whether arbitration in New York is appropriate under Article IX(C)

falls squarely within the determination that the arbitrators must reach in deciding whether they have

jurisdiction to hear the claims at issue. Where a court finds that such questions of arbitrability must

be submitted to the arbitrator, "'it necessarily follows' that the [petitioners] have 'shown neither a

likelihood of success on the merits, nor a sufficiently serious question going to the merits along with

---

[61]
       See, e.g., DI 11 at 14 ("[t]he License Agreement and iXblue's own filings unambiguously establish that Paris is the proper forum for this dispute"); DI 28 at 6 ("Both the License Agreement and iXblue's own evidence expressly and unambiguously confirm that iXblue has no basis to maintain the New York Arbitration.").

[62]
       DI 16-2 at ¶ 57.

a balance of hardships tipping decidedly toward [them] to warrant the grant of a preliminary injunction barring arbitration.'"[63]

*Conclusion*

For the foregoing reasons, petitioners' motion for a preliminary injunction and to stay the New York arbitration is denied.[64] iXblue's motion to dismiss is granted, albeit without prejudice to any further application to the Court for reasons consistent with this opinion.

SO ORDERED.

Dated:        February 6, 2019

Lewis A. Kaplan
United States District Judge

---

[63]

    *CRT Capital Group*, 63 F.Supp.3d at 382 (quoting *Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21, 30 (2d Cir.1996)).

[64]

    Petitioners seek also an order compelling iXblue's participation in the Paris arbitration. There has been no showing, however, that iXblue has failed to participate in the Paris arbitration. Rather, petitioners have submitted that the Paris tribunal was fully constituted in July 2018, that iXblue has appointed its own arbitrator in the Paris arbitration, and that SED and iXblue have entered into a tolling agreement until a challenge to SED's party-appointed arbitrator in Paris is resolved. DI 28 at 7; DI 12 at 10-11. Accordingly, there appears to be no merit to the claim that an order compelling ixblue's participation in the Paris arbitration is warranted.